(LOCAL LAW.)

### DANFORTH'S LESSEE v. THOMAS.

The act of assembly of North Carolina, passed between the year 1783 and 1789, avoids all entries, surveys, and grants of lands set apart for the Cherokee Indians, and no title can be thereby acquired to such lands.

The boundaries of the reservation have been altered by successive treaties with the Indians, but *it seems* that the mere extinguishment of their title did not subject the land to appropriations, unless expressly authorized by the legislature.

ERROR to the circuit court for the district of East Tennessee. This cause, depending mainly on the same principles with the preceding case of *Preston* v. *Browder,*[a] was argued by Key for the plaintiff, and by Jones for the defendant in error. The facts are fully stated in the opinion of the court.

a Ante, p. 115.

TODD, J., delivered the opinion of the court as follows :

This was an action of ejectment brought by the plaintiff in error against the defendant in error. On the trial of the cause in the circuit court, it appeared from evidence that the land in controversy was situate in the tract of country lying south of Holston and French broad river, and between the rivers Tennessee and Big Pigeon, the Indian title to which was extinguished by the treaty of Holston. The plaintiff claimed by virtue of a grant, issued by the state of North Carolina, bearing date the 26th of December, 1791. The defendant claimed under a grant from the state of Tennessee, bearing date the 2d of January, 1809. The defendant, by his counsel, objected to the grant under which the plaintiff claimed title being admitted in evidence, on the ground that it was for land which the laws of North Carolina had prohibited from being entered, surveyed, or granted. The court sustained the objection, and prohibited the grant from going in evidence to the jury; whereupon a verdict and judgment was rendered in favour of the defendant. A bill of exceptions was taken to the opinion of the court, and the cause was brought up to this court by writ of error.

The correctness of the opinion of the circuit court depends on the sound construction of the act of the general assembly of the state of North Carolina, passed in 1783, c. 2. s. 5 and 6, whereby the lands, within certain limits therein designated, (including the lands in controversy) are reserved for the Che-

rokee Indians, and the citizens prohibited from entering and surveying lands within those limits. It is contended, on the part of the plaintiff, that this act cannot be construed, nor did the legislature mean to give the Indians a *right of property* in the soil, but merely the *use and enjoyment* of it. That the succeeding legislatures, by the acts of 1784, 1786, and 1789, have changed this reservation for the use of the Indians, and given unlimited access, for tne purposes of making entries and surveys " to all lands not before specially located," and io " all vacant lands" within the limits of the state. Consequently, locations could be made, and grants issued to perfect titles of lands lying within the limits of the Indian reservation.

Whether the legislature had the power, or intended to give the Indians a *right of property* in the soil, or merely *the use and enjoyment* of it, need not be inquired into, nor decided, by this court; for it is perfectly clear, that the 5th section of the act of 1783, c. 2., prohibits all persons from making entries or surveys for any lands within the bounds set apart for the Cherokee Indians, and declares all such entries and grants thereupon, if any should be made, utterly void. They had the power, and have declared, unequivocally, an intention, to prohibit entries from being made within those reservations. The several acts of 1784, 1786, and 1789, although they contain general expressions, which, if taken singly, might seem to sanction entries and surveys for " all lands not before specially located," or to " all vacant lands ;" yet, when taken together, these gene-

1816.

Danforth's
Lessee
v.
Thomas.

1816.

Danforth's
Lessee
v.
Thomas

ral expressions must be controlled by the restrictions and prohibitions as to the reservations for the Indian tribes. The reasoning used in the case of Preston v. Browder, applies with equal, if not greater, propriety, to this case. And, although at different periods different sections of these reservations have been subjected to appropriation by entries and surveys, it has been in consequence of the several treaties with the Indians, by which the boundaries of the reservations have been altered, and the Indian claim extinguished; but it is believed, that the mere *extinguishment* of the Indian title did not subject the land to appropriation, until an act of the legislature authorized or permitted it. Whatever doubts this court might entertain on this subject, were they now construing these laws upon the first impression, that doubt would be removed on a view of the case of Avery v. Strother, in the Reports in Conference, p. 431., decided by the judges of the supreme court of North Carolina. This is a decision directly in point, made by the supreme court of the state, construing the laws brought into the view of this court, and is decisive of this case. And, as this court have been uniformly disposed to pay great respect to the decisions of the state courts respecting titles to real estate, this decision has its full influence on the present question; and, therefore, the judgment of the circuit court is unanimously affirmed with costs.

Judgment affirmed.