Per Curiam.
The complainant entered 640 acres of land in Carter’s office, in Washington County, on the 24th of February, 1778, and obtained a grant from the State of North Carolina, posterior in date to the grant of the defendant hereafter mentioned. The * defendant entered a tract of land in John Armstrong’s office in October, 1783, and included in his survey a great part of the land covered by the plaintiff’s entry. He obtained a grant prior in date to the plaintiff’s grant. The plaintiff also entered in John Armstrong’s office the same land which was covered by his entry in Carter’s office ; but his entry in Armstrong’s office was after the entry made by the defendant in the same office. A question was made at the bar, concerning the sufficiency of the plaintiff’s entry, which the court thought was a special entry; but as the cause was decided on another point, the words of that entry are not here stated. Other questions were also made, which are not here stated, nor the evidences upon which they rested, for the same reason.
The court is of opinion that the entry of the plaintiff, made in Carter’s office on the 24th. of February, 1778, being to the westward of the line commonly called Brown’s line, which was then the line agreed upon between the State of North Carolina and the Indians, which is described in the act of Assembly of April, 1778, was not authorized by the laws of North Carolina, and was condemned by the Assembly of that State, 17^8, ch. 5, § 5, and by the act of 1783, ch. 2, §§ 4, 5. The act of 1777, ch. 1, § 3, for the appropriation of vacant lands offered for sale, and which were to be purchased and entered in the public offices, in these words, “ lands not heretofore granted by the lords proprietors, or king of Great Britain, before *19 the 4th day. of July, in the year of our Lord 1776, or which have come to this State by treaty or conquest.” The latter words are restrictive of the generality of the former, and signify that although the county of Washington extended to the Mississippi, and to the southern and northern boundary of the State (1777, ch. 21,) yet it comprehended Indian lands which had not been ceded to the State, and which, therefore, this State did not mean * to use. The State then not having sold the lands in question, the purchase money ought to have been refunded to the enterer, as directed by the act of 1778, ch. 3. The plaintiff had no equitable right as against the State to demand a legal title to be made for the lands in question. He had no estate in equity which, from the date of his entry, can be connected with the date of his grant giving him a title from the date of his entry. His title, if any, is legal, without relation to any anterior period, and is postponed in law to the legal title of the defendant. The words of the act of 1777, ch. 1, § 3, are, “any lands lying in such county, which have not been granted by the crown of Great Britain or the lords proprietors of Carolina, or any of them, in fee before, the 4th day of July, in the year 1776, or which accrued or shall accrue to this State by treaty or conquest.” The complainant’s bill must be dismissed with costs to be paid by him to the defendant.
See Jackson v. Honeycut, 1 Tenn. 30; Proffit v. Williams, 1 Yer. 89; Preston v. Browder, 1 Wheat. 115; Danforth v. Thomas, 1 Wheat. 155; King’s Digest, 7831.