Mr. Justice Johnson
delivered the opinion of the Court.
This is one of those cases which not unfre-quently occur, in which, for want of the scrutinizing eye of the party interested to maintain a judgment below, the Court there is nhade to appear to have given a decision very different from that actually rendered. But, whatever may be the opinion of this Court, independently of the record, we are concluded by the bill of exceptions, and must decide according to those questions which the record presents.
' The parties are citizens of the same State, but jurisdiction is given to the Courts of the United State's, by the fact of their claiming title , to the land in controversy, under grants from different States, to wit, the States of North Carolina and Tennessee.
The facts stated in the bill of exceptions,, taken in connexion with the laws of the two States and public treaties,, sufficiently exhibit to this Court, that the grant from the State of North Carolina, under which, the plaintiff made title, although commencing in, and embracing, a tract of country over which the Indian title had been extinguished, yet extended into, and included, a large body of land, over which the Indian title existed at the time of. the survey, but has since been extinguished. Had the case, then, set forth that the land covered by the defendant’s grant lay within the country which was subject to the Indian title, at the time of Danforth’s grant, and bore date subsequent to the extinguishment of the Indian title, it would, *675 probably, have exhibited a true view of the case which the Court below vvas called on to decide.
But, so far from exhibiting this State of the case, the facts admitted, not only do not confine the controversy to the tract of country that lay within the Indian boundary, but, taken in their literal meaning, expressly admit the contrary.
The words of the admission are, “that the de-. fendant was in possession of the land claimed by the plaintiff.” And when we come to inquire what land the plaintiff claims in the suit, we find it to be the whole 100,000 acres, “ the beginning corner of which, and a portion of the land covered thereby, lay in a tract of country to which the Indian title had been extinguished, prior to making the survey and issuing the grant.
Here, then, we have the parties, contrary to all the probable truth of the case, contending about a title to land lying without the Indian boundary at the time it was surveyed for the plaintiff in ejectment.
But we must take the case as we find it on the record, and decide accordingly.
It appears, then, that the plaintiff’s grant was rejected in the Court below, and not permitted to be read to the jury. This rejection could only be sustained upon the ground that it was wholly void, or wholly inadmissible in that cause. For if the grant was good but for an acre of the land claimed in the action, the Court could not have withheld it fi'Qm the jury.
As to lands surveyed within the Indian boundary, this Court has never hesitated to consider all *676 such surveys and grants as wholly void; but .as the total rejection of the grant, according to the cáse stated, goes to. its validity as to that part-of the land, also which lay without the Indian boundary, there must be found some other ground for sustaining the decision, than that which invalidates surveys executed in the Indian territory.
In the present case, there can be but two such grounds supposed to exist; either that there was no law authorizing the survey in any part of the land granted, although without the Indian boundary, or, that the whole was affected by the illegality of that part which extended within that boundary.
It'wasin the first of these alternatives that the Court held the case under advisement from the last term. In. the case of Danforth v. Thomas, (1 Wheat. Rep. 155.) this Court threw out the suggestion, that a grant of land must have some sanction created by statute. As relates to the present subject, it did not appear that any law had been passed, subsequent- to the extinction of the Indian title, by which this recent purchase was authorized to be taken up under warrants.
But the Court, upon consideration, are satisfied, that under the laws and practice affecting the lands in question, the extension of the county line subjected the lands purchaséd of the Indians, to the general land laws of . the State. By the 3d section of the act of 1777, entries are permitted wjthin any county of the State, and the creation of counties has always,, in that State, been held *677 to bring the vacant lands within the county under the operation of that act.. .
On the second alternative, it was contended in argument, that the survey was notin its inception invalid ;• that it was good as to part, because .out of the Indian boundary;-and as to the residue,: was made good under the general provisions of the laws of North Carolina in favour of removed warrants; that, at most, it was only suspended by the Indian title, and attached legally and effectually to the soil, as soon as the interposing title of the Indians was removed.
. In the two cases of Preston v. Browder, and Danforth v. Thomas, decided in this Court in 181.6, (1 Wheat. Rep. 115. 155.) the inviolability of the Indian territory is fully recognised^ It was the law of the land, as adjudged . in the case of Artery n. Strother, decided in the North Carolina Court of Conference, in 180^. .'Indeed, the State óf Nbhh Carolina appears to have been sedulous in her efforts to prevent encroachments upon the Indian hunting grounds, and her laws-are express and pointed in invalidating entries and grants made within such reservations.
But the present grant commences in a tract of cduntry over which the Indian title was extinct} and whatever might be the state qf right, were the beginning, corner, within that boundary^ and a portion of the land beyond it, we see nothing in the laws of North Carolina ox Tennessee, to avoid a grant, in the whole, when it commences legally, and only covers in part the-lands on which surveys are prohibited. For,.that part, therefore, which *678 lies without the boundary, the grant must be held valid, and this alone entitles the plaintiff to a reversal. ,But as the cause must be again tried below, and the question on its validity as to the residue, as presented by the bill of exceptions, has been argued fully, and must arise again, we will now consider it.
The points made by the plaintiff’s counsel arc stated by himself thus :
1. That the State of North Carolina had a right to issue the grant in question, and the Court erred in not suffering it to be read.
2. That the grant was good as to that part of the land to which the Indian title was extinguished.
3. That the grant, oeing founded on a removed warrant, was good for the whole land.
To the first and second of these positions we have expressed our assent, and only the third remains to be disposed of,
This rests upon the sixth section of the act of North Carolina, Of 1784, entitled, “ an act to prevent the issuing of grants,” &e.
By this section, the right is given to remove warrants which have been located upon lands previously taken up, so as to place them upon vacant lands; and the supposed operative words, in the present instance, are these : “ Shall be at full liberty toi remove his or their warrants to any other lands, on which no entry or entries have been previously specially located ; and the Surveyor, or Surveyors, are hereby authorized and required to survey and make return thereof, in like manner as for other returns and surveys, as by law directed ”
*679 Reference was had to the act of 1786, and the cession acton the same subject, but they add nothing to the provisions of the act of 1?84.
The effort is to construe this act as virtually repealing the previously existing laws, that prohibit surveys of land within the Indian boundary, and as Opening the whole State to the right of removing warrants.
We are of opinion, that there are several considerations, which repel this construction.
It is obvious, that the lands to which such removals are authorized, must be lands-previously subjected to éntry and survey, otherwise the absurdity occurs, of a reservation in favour of entries and. surveys which the existing laws have declared . to be nullities.
Again; “the Surveyors are authorized and required to survey and make return, in like manner as for other surveys and returns is by law directed.” But does any law; authorize or enjoin a survey of the Indian country ? or shall this act be construed to pnjoin as a duty, that which an existing act prohibits under á penalty ?
These considerations remove all doubt, on the correct construction of the law respecting removed Warrants ; but if doubts did exist, the general policy and course of legislation of the State would forbid such a construction. The purport of the law is, to authorize removals to that land only, which might be at the time legally entered and surveyed by other warrants. '
*680 We are of opinion, that there is error in the ' judgment of the Court below, in refusing to let the grant be read to the jury.
Judgment reversed.

 He cited Preston v. Browder, 1 Wheat. Rep. 115. Danforth v. Thomas, Id. 155.